UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                                Chapter 13

Pamela Gough Bateson,                                    Case No. 13-55057
a/k/a Pamela E. Gough-Bahash,
                                                                      Hon. Phillip J. Shefferly
            Debtor.
_____/

**OPINION GRANTING DEBTOR'S MOTION TO
COMPEL CHAPTER 13 TRUSTEE TO RECOUP
FUNDS AND DISBURSE THEM TO THE DEBTOR**

**Introduction**

This is a Chapter 13 case in which the debtor confirmed a plan but later dismissed her case voluntarily. At the time the case was dismissed, the Chapter 13 trustee ("Trustee") had funds on hand that the debtor had paid to the Trustee pursuant to her plan. The issue presented in this opinion is whether the Trustee must pay those funds to the debtor's creditors in accordance with the terms of the plan or must return those funds to the debtor.

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**Facts**

On August 7, 2013, Pamela Gough Bateson ("Debtor") commenced this case by filing a voluntary petition under Chapter 13 of the Bankruptcy Code. According to her schedule A, the Debtor owned a residence ("Residence") with substantial equity. On January 17, 2014, the Debtor filed an amended Chapter 13 plan ("Plan") that provided for her to retain the Residence and to make

monthly payments to the Trustee each in the amount of $8,500.75 for 60 months. On March 4, 2014, the Court entered an order ("Confirmation Order") confirming the Plan. The Confirmation Order increased the amount of the Debtor's monthly payment into the Plan to $8,885.00 and also provided that the Debtor would pay all of her class 9 general unsecured creditors 100% of their allowed claims. The Confirmation Order recited that a 100% distribution on unsecured claims was necessary because the unsecured creditors would have received payment in full if the Debtor had filed a Chapter 7 bankruptcy case because of her substantial equity in the Residence.

Following confirmation, the Debtor made Plan payments, but eventually defaulted. At one point the Trustee filed a motion to dismiss and at another point the mortgage holder filed a motion for relief from the automatic stay. Each time, the Debtor was successful either in resolving the motion or resisting the relief sought, although she struggled to make all of her payments and fell behind in making them. The Debtor made her last payment under the Plan on January 12, 2016. On January 19, 2016, the Debtor filed a motion requesting a voluntary dismissal of her case. On January 20, 2016, the Court entered an order dismissing her case. At the time of the dismissal, the Trustee had $16,614.96 ("Funds") on hand. On February 4, 2016, the Trustee disbursed the Funds to four of the Debtor's unsecured creditors, with American Express and Discover Bank together receiving over $14,500.00 of the Funds.

On April 4, 2016, the Debtor filed a motion ("Motion") to compel the Trustee to recoup the Funds and disburse them to the Debtor. On April 22, 2016, the Trustee filed a response ("Response") to the Motion. On May 10, 2016, the Court held a hearing and took the Motion under advisement.

## Discussion

The Bankruptcy Code does not expressly state what a Chapter 13 trustee must do with any funds that the trustee holds in a case that is dismissed after confirmation of a plan. Nonetheless, the Debtor and the Trustee argue that there are sections of the Bankruptcy Code that control. The Debtor relies on § 349 and the Trustee relies on § 1326.

Section 349 is titled "Effect of dismissal." The Debtor argues in the Motion that when a Chapter 13 case is dismissed, a Chapter 13 trustee must distribute any funds held by the trustee back to the debtor because § 349(b)(3) of the Bankruptcy Code provides that dismissal of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." In the Response, the Trustee argues that since post-petition wages by definition did not exist at the time that a case was commenced, it is nonsensical to talk about revesting them "in the entity" in which they were "vested immediately before the commencement of the case." For this reason, the Trustee argues that § 349(b)(3) is irrelevant to the question of who was entitled to get the Funds on dismissal.

Section 1326 is titled "Payments." Section 1326(a)(1) requires a debtor to commence making payments to the Chapter 13 trustee not later than 30 days after a Chapter 13 case is filed in the amount proposed by the plan. Section 1326(a)(2) then instructs a trustee what to do with those payments:

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

According to the Trustee, § 1326(a)(2) is a "clear and coherent scheme" for distributing funds in all Chapter 13 cases, and contains no "gaps" in its distribution scheme: "If the plan is not confirmed, then the debtor receives a refund. If a plan is confirmed, then creditors receive payments." (Trustee's brief, ECF No. 121 at 8 of 25.) In the Motion, the Debtor argues that § 1326(a)(1) only applies to payments made by a debtor pre-confirmation, and not to payments made by a debtor post-confirmation. Because the Funds are comprised of payments made by the Debtor post-confirmation, the Debtor argues that § 1326(a)(2) is irrelevant to the question of who was entitled to get the Funds on dismissal.

Because the Bankruptcy Code does not expressly state – in § 349(b)(3), § 1326(a)(2) or in any other section – what a Chapter 13 trustee must do with any funds that a Chapter 13 trustee holds when a case is dismissed, identifying the proper course of action for a Chapter 13 trustee upon dismissal of a Chapter 13 case is not a new issue. Both the Debtor and the Trustee cite multiple opinions from bankruptcy courts around the country that have split on the issue of who gets the money when a Chapter 13 case is dismissed.[1] Each of the two lines of cases cited by the Debtor and the Trustee make cogent points. However, a recent opinion by the Supreme Court determines the outcome in this case.

In <u>Harris v. Viegelahn</u>, __ U.S. __, 135 S. Ct. 1829 (2015), the Supreme Court addressed what happens when a Chapter 13 case comes to an end because it is converted to another chapter of the Bankruptcy Code. The issue in <u>Harris</u> was what must a Chapter 13 trustee do with funds

---

[1] <u>Compare</u> <u>Williams v. Marshall</u>, 526 B.R. 695 (N.D. Ill. 2014) (ruling that undistributed funds held by a Chapter 13 trustee should be refunded to the debtor upon dismissal), <u>with</u> <u>In re Parrish</u>, 275 B.R. 424 (Bankr. D.C. 2002) (ruling that such funds should be distributed according to the confirmed plan).

-4-

on hand that were received from a debtor post-confirmation when the debtor converts the case to Chapter 7. Before reviewing specific sections of the Bankruptcy Code, the Supreme Court first focused on the voluntary nature of a Chapter 13 case. "A wholly voluntary alternative to Chapter 7, Chapter 13 allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." Id. at 1835. The Supreme Court next recognized that, unfortunately, many debtors fail to complete a Chapter 13 plan successfully, and discussed the competing lines of cases that have developed regarding what a Chapter 13 trustee must do with any funds on hand when a debtor in an unsuccessful Chapter 13 case converts the case to Chapter 7 post-confirmation.

The Harris court examined § 348 of the Bankruptcy Code, titled "Effect of conversion," and specifically noted that § 348(f)(1)(A) provides that in a case converted from Chapter 13 to Chapter 7, a debtor's post-petition earnings do not become a part of the Chapter 7 estate. The Supreme Court then turned to the question of whether those funds must be returned to the debtor upon conversion, or disbursed to the debtor's creditors under the debtor's confirmed Chapter 13 plan.

> By excluding postpetition wages from the converted Chapter 7 estate, § 348(f)(1)(A) removes those earnings from the pool of assets that may be liquidated and distributed to creditors. Allowing a terminated Chapter 13 trustee to disburse the very same earnings to the very same creditors is incompatible with that statutory design. We resist attributing to Congress, after explicitly exempting from Chapter 7's liquidation-and-distribution process a debtor's postpetition wages, a plan to place those wages in creditors' hands another way.
>
> . . . In sum, § 348(f) does not say, expressly: On conversion, accumulated wages go to the debtor. But that is the most sensible reading of what Congress did provide.

Id. at 1837-38. The Supreme Court next focused on another subpart of § 348:

> Section 348(e) also informs our ruling that undistributed postpetition wages must be returned to the debtor. That section provides: "Conversion [from Chapter 13 to Chapter 7] terminates the service of [the Chapter 13] trustee." A core service provided by a Chapter 13 trustee is the disbursement of "payments *to creditors*." § 1326(c) (emphasis added). The moment a case is converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to provide that "service." § 348(e).

Id. at 1838. Harris concluded by holding that the Chapter 13 trustee should not have distributed the funds on hand to the debtor's creditors under the confirmed plan but instead should have returned those funds to the debtor.

In this case, the Trustee argues in the Response that Harris is inapplicable because Harris dealt with a case that was *converted* to Chapter 7 post-confirmation, rather than a case that was *dismissed* post-confirmation, like the present case. The Trustee emphasizes that in reaching its decision, the Harris court specifically quoted the language in § 348(e) of the Bankruptcy Code that "terminates the service" of the Chapter 13 trustee upon conversion, replacing the Chapter 13 trustee with a Chapter 7 trustee. This makes sense to the Trustee because there cannot be two trustees administering the same property. The Trustee attaches great importance to the fact that unlike § 348, which applies to conversion, § 349, which applies to dismissal, contains no similar provision "terminating" the service of a Chapter 13 trustee upon dismissal. The Trustee reasons that while Harris governs Chapter 13 cases that are converted to Chapter 7 post-confirmation, Harris has no application where a Chapter 13 case is dismissed, rather than converted, post-confirmation.

The Court disagrees. The Trustee's analysis overlooks two important points in Harris. First, the Supreme Court explained that "[w]hen a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway." Id. at 1838. Although the Debtor's case was not converted to Chapter 7, as occurred in Harris, the Supreme

-6-

Court's reasoning is equally applicable to this case. Once the Debtor dismissed her case, "no Chapter 13 provision holds sway." That means that the effect of a Chapter 13 confirmation order is no greater in a dismissed Chapter 13 case than it would be in a converted Chapter 13 case. In either instance, the Chapter 13 case is over. If anything, the Supreme Court's reasoning is even more compelling when applied to a dismissed case than to a converted case because in a dismissed case, *none* of the provisions of the Bankruptcy Code remain in effect, other than those provided for in § 349. The obvious response to the Trustee's assertion that there is no counterpart in § 349 to § 348(e)'s termination of the Chapter 13 trustee is that there is no need for a counterpart in § 349 because dismissal ends the entire case and does not result in the appointment of a new trustee.

The Trustee is unquestionably correct that § 1326(a)(1) requires a debtor to make payments, and that § 1326(a)(2) tells a trustee what to do with those payments. Specifically, § 1326(a)(2) tells a trustee that if a plan is confirmed, a trustee shall distribute a debtor's payments in accordance with the plan. But the duties of a debtor under § 1326(a)(1), and the duties of trustee under § 1326(a)(2), do not exist in a vacuum, nor do they exist in perpetuity. Those duties arise only when a Chapter 13 case is filed, and they continue in effect only while a Chapter 13 case is pending. There is nothing in § 1326 – nor in any other section of the Bankruptcy Code – that either explicitly or implicitly imposes those duties upon a debtor and a trustee once a Chapter 13 case comes to an end. Regardless of whether § 1326(a)(2) governs only pre-confirmation payments – as the Debtor argues – or governs both pre-confirmation and post-confirmation payments – as the Trustee argues – the Trustee's duties under § 1326(a)(2) cease to exist once the case is no longer in Chapter 13.

A second and equally important point in Harris is the Supreme Court's point-blank rejection of the idea that a debtor's creditors somehow obtain a vested right in funds held by a Chapter 13

-7-

13-55057-pjs    Doc 126    Filed 06/23/16    Entered 06/23/16 11:57:19    Page 7 of 11

trustee just because a plan has been confirmed: "Nor can we credit the suggestion that a confirmed Chapter 13 plan gives creditors a vested right to funds held by a trustee. '[N]o provision in the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors.'" Id. at 1839 (quoting In re Michael, 699 F.3d 305, 312-13 (3d Cir. 2012)). There is no logical reason why this statement of law should be any less true in a dismissed Chapter 13 case than it is in a converted Chapter 13 case. If creditors have no vested rights in funds held by a Chapter 13 trustee in a converted case post-confirmation, it necessarily follows that those creditors have no vested rights in funds held by a Chapter 13 trustee in a dismissed case post-confirmation.

Because Harris dealt with a Chapter 13 case that was converted rather than dismissed, it is factually distinguishable from this case. But the fact that distinguishes it – conversion rather than dismissal – is a distinction without a difference, and not one that permits a different result in this case than in Harris. It is true that § 1326(a)(2) requires a Chapter 13 trustee to disburse funds to creditors in accordance with a plan while a case is pending in Chapter 13. But once the Chapter 13 case is over – whether by conversion to Chapter 7 or by dismissal – Harris makes clear that a Chapter 13 trustee's authority and responsibility under § 1326(a)(2) terminates.[2]

The application of Harris in this case is also consistent with Congress' intention in § 349(b) to basically unwind the entire case as if it never happened. Section 349(b) "serves to undo the

---

[2] While some of the statements in Harris are arguably dicta, the Sixth Circuit "has explained that '[l]ower courts *are obligated to follow Supreme Court dicta*, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale.'" Ellmann v. Baker (In re Baker), 791 F.3d 677, 682 (6th Cir. 2015) (quoting Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky., 607 F.3d 439, 447-48 (6th Cir. 2010) (citations and internal quotation marks omitted)) (emphasis added). In this case, there is no substantial reason for disregarding any dicta in Harris, a recent case decided by a unanimous Supreme Court.

-8-

bankruptcy case to the extent possible–to put all parties in the position they were in before the case was filed." In re Hamilton, 493 B.R. 31, 38 (Bankr. M.D. Tenn. 2013) (citing S. Rep. No. 95-989, 49, reprinted in 1978 U.S.C.C.A.N. 5787, 5835). "[A]fter a bankruptcy case is dismissed, the debtor returns to the status he or she was in before the petition was filed." Bli v. Greenstone Farm Credit Services, FCLA (In re Bli Farms), 312 B.R. 606, 622 (E.D. Mich. 2004) (citations omitted). That means that any funds paid by a debtor to a Chapter 13 trustee that are still held by the trustee on dismissal must be returned to the debtor under § 349(b)(3).

The Trustee next argues that requiring him to return funds on dismissal to the Debtor represents a departure in practice in this district. The Court has no reason to dispute that statement. But the practice must conform to the law. The pronouncements by the Supreme Court in Harris, even though not dealing with a dismissed case, but instead dealing with a converted case, do not leave room for any principled reason to restrict them to converted cases. In either conversion or dismissal, the Chapter 13 trustee's role is ended.[3]

In the Response, the Trustee correctly notes that even if the Court holds – as it does – that a Chapter 13 trustee ordinarily must return any funds on hand on the date of dismissal to the debtor, § 349(b)(3) nonetheless expressly authorizes a bankruptcy court to "order otherwise" upon a showing of "cause." According to the Trustee, cause exists in this case because of the following

---

[3] Although not made part of the record in this case, the Court notes that the form dismissal order routinely prepared and used for years by the Trustee is consistent with the Court's analysis in this case. The Trustee's standard form dismissal order provides that the Trustee "is discharged as Trustee in this matter, and the Trustee and his surety are released from any and all liability on account of the within proceeding." This verbiage is consistent with the notion that once a Chapter 13 case is dismissed, the Chapter 13 trustee no longer has a role. The Trustee cannot on the one hand be discharged and released from all liability as a Chapter 13 trustee, and on the other hand insist that he must still comply with the terms of a Chapter 13 plan in a dismissed case.

facts: the Debtor was in Chapter 13 for almost 30 months from the time she filed her petition until dismissal; even though the Plan proposed a 100% dividend on all allowed claims, because the Debtor made only half of her Plan payments, the holders of allowed unsecured claims received only 27%; out of the Plan payments that the Debtor did make, more than $105,000 was distributed to the holder of the first mortgage on the Residence; the Debtor "unilaterally" controlled the timing of the dismissal and the Debtor attempted to use that timing to the disadvantage of creditors by dismissing the case before the Trustee could distribute "the Funds"; the Debtor made no effort to modify the Plan to meet the promised 100% dividend; and the Debtor enjoyed the benefit of the automatic stay throughout her Chapter 13 case.

Even assuming that all of the facts alleged by the Trustee are true, those facts do not demonstrate cause for the Court to order under § 349(b)(3) that the Funds should be disbursed to anyone other than the Debtor. The Trustee does not allege any dishonesty by the Debtor, nor any facts that could support a finding of gamesmanship or bad faith. The facts that the Trustee relies upon in support of his assertion of cause are hardly unique to this case. In many respects, they are typical of unsuccessful Chapter 13 cases: the Debtor missed payments yet enjoyed the benefit of the automatic stay while she tried to pay all of her creditors 100% during her Chapter 13 case. And the Trustee's contention that the Debtor "unilaterally controlled the timing of the dismissal" merely recites what § 1307(b) expressly provides: a debtor may dismiss her Chapter 13 case "at any time." By themselves, those facts do not constitute cause under § 349(b)(3).

Nor does the fact that the Trustee already disbursed the Funds constitute cause. In contrast to a case where a trustee has made distributions to many creditors, the Trustee in this case distributed the Funds to only four creditors, with two of those creditors having received most of the Funds. The

Trustee does not allege that recoupment from those few creditors will impose an onerous administrative burden on the Trustee in this case.

The Court's holding is not intended in any way to limit the facts that might demonstrate cause under § 349(b)(3) to warrant the Court "ordering otherwise." The Court holds only that the facts alleged by the Trustee in this case do not demonstrate cause. Absent a demonstration of cause under § 349(b)(3), a Chapter 13 trustee must return any funds on hand to the debtor upon dismissal.

For the reasons explained, the Court will grant the Motion. The Court will enter a separate order consistent with this opinion.

.

**Signed on June 23, 2016**

          **/s/ Phillip J. Shefferly**
    **Phillip J. Shefferly**
    **United States Bankruptcy Judge**